**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Marie Ashmus, | : | Case No. 1:06CV2364 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Bay Village School District Board | : | |
| of Education, et al., | : | |
| | : | **MEMORANDUM OPINION** |
| Defendants | : | |

This case is before the Court on the motion of Defendant Bay Village City School District Board of Education ("School Board") for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Plaintiff, Marie Ashmus, "a retired Japanese-American female teacher, over the age of forty," initiated this action on September 28, 2006 against the defendants School Board, Bay Village Teachers Association ("BVTA"), and State Teachers Retirement System ("STRS"), alleging that she had been denied employment opportunities and discriminated against based on her age, race and national origin, and in retaliation for the pursuit of her rights under federal and state law, in violation of the federal Age Discrimination In Employment Act of 1967 (ADEA), 29 U.S.C. §621 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), et seq., the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Sections 4111, et seq., and the

1

Ohio Fair Employment Practices Act, Ohio Revised Code Sections 4112, et seq., "and/or 42 U.S.C. §1983."

On January 9, 2007 this Court granted the motion of STRS to dismiss for lack of subject matter jurisdiction the age discrimination claims raised in Count Seven of the complaint.  The following factual summary appeared in that opinion:

> The basic operative facts alleged in the complaint start with the plaintiff retiring in 2003 from the Bay Village City School District after having taught in that system for twenty-nine years, her last position being as a kindergarten teacher.  She then became re-employed as a half-time substitute teacher for the 2003-2004 and 2004-2005 school years.  Near the end of that second school year the plaintiff learned that the teacher for whom she had been substituting would not be returning, so that the position would become a permanent opening, and she applied for that full-time position.
>
> It is then alleged that after she applied she learned that Mr. Clinton Keener, the Superintendent of the Bay Village School District was against the rehiring of retired teachers, and that when she met with him in May 2005 he "stated that he did not agree with the practice of hiring retired teachers and would only do so if the retired teacher had a quality that no younger applicant had," and that when she "cited her wealth of experience as a teacher, her educational and professional achievements and her status as the only minority teacher in the school district" he responded that "these qualifications were 'nothing'."
>
> The complaint next alleges that thereafter the position the plaintiff sought was awarded to "a younger, less qualified Caucasian applicant" and that she has also applied for several other permanent positions which "were awarded to younger Caucasian applicants," but acknowledges that in August 2005 she was hired [for the 2005-2006 school year] as a long-term substitute and as the Kindergarten Grade Level Coordinator under a supplemental one-year contract.
>
> It appears that she has not been employed by the Board since then, as paragraph 28 of the complaint alleges "Plaintiff subsequently applied for any open position in the school district within her certification (K through 8).  Plaintiff's applications for several such

2

positions in the district were denied.  In each case, the individual hired was younger and Caucasian, and had not filed a charge of discrimination against the school district."

It is then alleged that "Plaintiff's contractual status and subsequent non-renewals were all done pursuant to the discriminatory policies embodied in Section 6.012 of the Memorandum of Agreement (hereinafter MOA) executed by the Board of Education and Defendant BTA and in place during all relevant times" and that such section "states in pertinent part that a teacher retired under STRS (hereinafter "reemployed [sic] teacher") is eligible for employment under a one year contract only, which will be automatically non-renewed at the end of the contract year; that a reemployed [sic] teacher is not eligible for continuing contract status during any period of employment with Defendant Board of Education; that the reemployed [sic] teacher is subject to placement on the salary schedule of experience of 5 years and a maximum education credit of Master's Degrees; and *inter alia*, that the reemployed [sic] teacher is not afforded other rights and benefits equal to that of a non-reemployed [sic] teacher."

On August 23, 2007 this Court issued two further decisions dismissing other of the claims raised by the plaintiff.

In the first, this Court granted the motion of the BVTA for judgment on the pleadings  and dismissed the claims against it, in light of the fact that the plaintiff's claim (found in Count Five of the complaint) that the BVTA failed in its duty to represent her was based entirely upon state law and, therefore, could only be brought before the Ohio State Employment Relations Board ("SERB").  This Court also held that the claims raised in Counts Five and Six (claim for discrimination based upon age, race and/or national origin brought under Ohio law) were untimely filed and, therefore, subject to dismissal.

In the second decision of that date, this Court granted the motion of the School Board for judgment on the pleadings and dismissed the claims for relief raised in Counts One and Two of the complaint (discrimination based upon age under the ADEA and the law of Ohio), as well as

3

allegations raised in Count Eight (discrimination under 42 U.S.C.§1983) for any discrete act occurring prior to September 28, 2004.

In the remaining counts the plaintiff alleges that she was discriminated against on the basis of her race and/or national origin, and that she suffered retaliation as a consequence of having filed claims of discrimination.  Plaintiff further claims that her rights to equal protection were violated. Those counts are as follows:

> COUNT THREE:  DISCRIMINATION  BASED  UPON  RACE
> AND/OR NATIONAL ORIGIN
> TITLE VII OF THE CIVIL RIGHTS ACT

46. Plaintiff incorporates as if fully rewritten herein the allegations contained in paragraphs 1 through 45 of Plaintiff's Complaint.

47. Defendant Board of Education discriminated against Plaintiff on the basis of her race and/or national origin in violation of Title VII by subjecting her to less beneficial terms and conditions of employment than similarly-situated non-minority applicants and by refusing to hire her because of her race and/or national origin for positions for which she was qualified.

48. Defendant Board of Education also retaliated against her for her pursuit of her rights under federal and state law by refusing to hire her for any position in the 2006-2007 school year.

49. As a result of Defendant Board of Education's discriminatory actions, Plaintiff has suffered damages including without limitation loss of wages, fringe benefits, and future earnings, damage to her reputation, the expense of attorney's fees, and emotional distress, in excess of Twenty-Five Thousand Dollars ($25,000.00).

> COUNT  FOUR:  DISCRIMINATION  BASED  UPON  RACE
> AND/OR NATIONAL ORIGIN
> OHIO  FAIR  EMPLOYMENT  PRACTICES  ACT  AND
> MINIMUM FAIR WAGE STANDARDS ACT

50. Plaintiff incorporates as if fully rewritten herein the allegations contained in paragraphs 1 through 49 of Plaintiff's Complaint.

4

51.    Defendant Board of Education discriminated against Plaintiff on the basis of her race and/or national origin in violation of Ohio Fair Employment Practices Act and Minimum Fair Wage Standards Act by subjecting her to less beneficial terms and conditions of employment than similarly-situated non-minority applicants and by refusing to hire her because of her race and/or national origin for positions for which she was qualified.

52.    Defendant Board of Education also retaliated against her for her pursuit of her rights under federal and state law by refusing to hire her for any position in the 2006-2007 school year.

53.    The wrongful conduct of Defendant Board of Education violates R.C. §4111.17 and Chapter 4112 of the Ohio Revised Code.

54.    As a result of Defendant Board of Education's discriminatory actions, Plaintiff has suffered damages including without limitation loss of wages, fringe benefits, and future earnings, damage to her reputation, the expense of attorney's fees, and emotional distress, in excess of Twenty-Five Thousand Dollars ($25,000.00).

<u>COUNT EIGHT: DEPRIVATION OF RIGHTS IN VIOLATION OF 42 USC §1983</u>

69.    Plaintiff incorporates as if fully rewritten herein the allegations contained in paragraphs 1 through 68 of Plaintiff's Complaint.

70.    The actions of Defendant Board of Education were conducted under color of state law by virtue of its status as a political subdivision and public employer.

71.    Defendant Board of Education's discriminatory actions are a violation of 42 U.S.C. §1983 because they deprive Plaintiff of her rights to equal protection and to be free from discriminatory conduct in her employment.

72.    As a result of Defendant Board of Education's violation of 42 U.S.C.§1983, Plaintiff has suffered damages including without limitation loss of wages, fringe benefits, and future earnings, damage to her reputation, the expense of attorney's fees and emotional distress, in excess of Twenty-Five Thousand Dollars ($25,000).

5

In its motion for summary judgment the School Board argues that the plaintiff has not met her burden of demonstrating a prima facie case of discrimination under Title VII, in light of the fact that she has not suffered an adverse employment action, that even if she had made such a showing the School Board has met its burden of showing that it had a legitimate, non-discriminatory reason for any employment action taken with regard to the plaintiff, and that plaintiff is unable to show that the reasons for such action were pretextual in nature.  As regards plaintiff's claims of retaliatory employment actions, the defendant argues that those claims must fail in light of the fact that plaintiff was employed by the School Board during the 2006-2007 school year, contrary to the allegations of the complaint.  The School Board's final argument is that plaintiff cannot recover under §1983 in light of the fact that her discrimination and retaliation claims cannot succeed, as well as the fact that she did not identify a policy or custom of discrimination employed by the School Board.

In opposing summary judgment, the plaintiff argues that comments made by the School Board superintendent, Mr. Clinton Keener, constituted direct evidence of "racial hostility" towards her.  The plaintiff also contends that she has satisfied her burden of demonstrating a prima facie case of discrimination with evidence that she is a member of the protected class, who applied for–and was qualified for– an available teaching position, and that she was passed over for the position when a person not within the protected class was hired.  In addition, plaintiff argues that subsequent to filing a complaint with the Equal Employment Opportunity Commission (EEOC), the School Board retaliated against her by "refusing to hire her for any position in the 2006-2007 school year."

The disposition of a motion for summary judgment is governed by Rule 56(c) of the Federal

Rules of Civil Procedure, which provides for the granting of such motion only where, "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to  judgment as a matter of law."  It is the court's function under such a motion to determine whether a genuine issue of material fact exists, as opposed to endeavoring to resolve any such factual issues.  Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974); 6 Moore's Federal Practice 56.15 [1.-0].

It is the initial burden of the moving party to demonstrate the absence of a genuine issue of material fact as to an essential element of the claims brought by the non-moving party.  Curto v. Harper Woods, 954 F.2d 1237, 1241 (6th Cir. 1992);  Wilson v. Zanesville, 954 F.2d 349, 350-351 (6th Cir. 1992);  Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

In Street v. J.C. Bradford & Co., supra, the Sixth Circuit Court of Appeals reviewed three then recent decisions of the United States Supreme Court addressing summary judgment practice, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).[1]  The court summarized those cases as standing for a number of new principles in summary judgment practice, including the fact that cases involving considerations of state of mind issues (such as discriminatory action) are not automatically inappropriate for summary judgment; that a federal directed verdict standard ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law")

---

[1]After the passage of a number of years the court's reference to those rulings as representing a "new era" of "dramatic change" may no longer hold true, but the characterization of their import as to motions for summary judgment being viewed with "more favorable regard" certainly remains true.

should be applied to summary judgment motions; that a non-moving party must provide "more than a mere scintilla of evidence" to avoid summary judgment; that the substantive law applicable to the cause of action will govern the materiality of the issues of fact; that the court has no duty to search the record to determine the existence of genuine issues of material fact; and perhaps most significant, that a trial court has more discretion than it would have in the past in weighing the evidence offered by the non-moving party, considered in light of the whole record, to determine whether that party's evidence does "more than simply show that there is some metaphysical doubt as to the material facts" or whether it demonstrates that the non-moving party's claims are "implausible". Id. at 1479-1480. (Footnotes and citations omitted.)

A prima facie case of discrimination may be demonstrated by presenting either direct evidence of intentional discrimination or circumstantial evidence which is used to create an inference of discrimination. DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004); Gibson v. City of Louisville, 336 F.3d 511, 513-514 (6th Cir. 2003).

Direct evidence, or "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions[,]" is proof of discrimination without the need for inferences. Grizzell v. City of Columbus, 461 F.3d 711, 724 (6th Cir. 2006); Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006), quoting Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 470 (6th Cir. 2005). A discriminatory remark, standing on its own, cannot be direct evidence of discrimination if it is uttered by one without managerial authority over the challenged personnel decision. Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000).

"In direct evidence cases, once a plaintiff shows that the prohibited classification played a

motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination."  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

As direct evidence of race and national origin discrimination the plaintiff now offers the fact that when she and her husband met on May 9, 2005 with Superintendent Keener to discuss the permanent, regular half-time kindergarten teacher position posted for the 2005-2006 school year, the subject of her Japanese ancestry arose, at which point she claims that Mr. Keener stated, "I know about your kind."[2]  Mr. Keener testified during his deposition that his brother had been divorced "for decades" from a Japanese-American woman but that she was "a great lady."  He did not remember making any such comment.  Plaintiff also claims that at some point during their conversation, plaintiff told Mr. Keener that her minority status could be seen as a benefit to minority students who may need to discuss problems, at which point he told her that "Being a minority was nothing."[3]

These two statements, standing alone, do not evidence discriminatory animus.  In order to find discriminatory animus in the first statement one would have to read "I know about your kind" along with the inference that Mr. Keener had a negative view of Japanese-Americans.  It is equally feasible that the statement standing on its own could be considered to mean that they were hard-working, intelligent, dedicated people.  The latter statement, "Being a minority was nothing," could

---

[2]Considering that the plaintiff relies on this statement as direct evidence of discrimination, this Court notes that this statement was not referenced in either the plaintiff's EEOC charge or in the instant complaint.

[3]Again, this Court finds it troubling that these statements were not referenced in either plaintiff's EEOC charge or in her complaint in these proceedings.

9

be read as meaning that minority status should not enter into an employment decision, whereas plaintiff would have this Court read into this ambiguous statement the inference that minority status negatively impacted the employment decision.

There was also no adverse employment action attendant to the evidence of direct discrimination offered by the plaintiff.  Subsequent to the May 2005 meeting the other applicant for the 2005-2006 half-time kindergarten teacher position, Ms. Beth Drinan, a half-time teacher who was under contract as a member of the bargaining unit with rights to continuing employment, who was not subject to the terms of the MOA as she was not previously retired, and who was deemed qualified for the job by her principal, Dr. McGlamery,[4] was hired for that position. However, plaintiff was recommended for another posted position for the 2005-2006 school year—full-time, long-term, substitute kindergarten teacher.  A contract for that position was executed on August 22, 2005, with her salary set at $24,287.50, the same as it would have been if she had been awarded the position which had been given to Ms. Drinan. Despite having accepted that position, prior to starting the school year plaintiff provided a medical excuse indicating that she was unable to work full-time and, therefore, unable to perform the job.  Had plaintiff been employed in either the position awarded to Ms. Drinan or the position for which she was selected, as a rehired retiree she nonetheless would have been automatically non-renewed at the end of the school year under the terms of the negotiated agreement.  In light of the fact that the plaintiff would have earned the same amount of money if she had worked in either position and that the same

---

[4]While plaintiff represented that Dr. McGlamery expressed the opinion that he deemed her more qualified for the job than Ms. Drinan, what he actually stated was that the two teachers had such differing styles that it was difficult to compare them and that he recommended Ms. Drinan for the job "based on [his] understanding of the bargaining agreement," with regard to rehiring retired teachers, as that had to form the basis of the employment decision. Absent such an agreement, however, he would have chosen the plaintiff.

10

result, non-renewal, would have occurred at the end of the school year, the evidence offered by the plaintiff did not constitute direct evidence of discrimination resulting in an adverse employment action.[5]

Absent direct evidence of discrimination, the following burden-shifting analysis applies.

The seminal case on employment discrimination is <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973), wherein the United States Supreme Court delineated a four part formula by which plaintiff can establish a prima facie case by showing, that he/she (1) was a member of a protected class, (2) was qualified for the position and/or performed it satisfactorily, (3) was discharged or suffered an adverse employment action, and (4) either that his/her position was filled by a non-member of the protected class or that he/she was treated less favorably than similarly situated individuals. <u>Id.</u> at 802; <u>see</u> also, <u>Johnson v. University of Cincinnati</u>, 215 F.3d 561, 572-74 (6th Cir.), <u>cert. denied</u>, 121 S.Ct. 657 (2000); <u>Allen v. Ohio Department of Rehabilitation and Correction</u>, 128 F.Supp. 2d 483 (S.D.Ohio 2001). This test is also used by the Ohio courts when faced with alleged violations of Ohio's anti-discrimination statutes. <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582 (6th Cir. 1992). <u>Accord</u>, <u>Fenton v. HiSan, Inc.</u>, 174 F.3d 827, 829 (6th Cir. 1999).

Strict adherence to the <u>McDonnell Douglas</u> formula is not required when there is direct evidence of discriminatory intent on the part of the defendant. <u>Shah v. General Elec. Co.</u>, 816 F.2d 264 (6th Cir. 1987) (plaintiff established prima facie case of discrimination even though she was not replaced after her discharge where she presented other evidence of discriminatory motive);

---

[5]Plaintiff provided additional evidence of what she perceived to have been Mr. Keener's "admitted bias against hiring retirees[,]" but that evidence was not considered as this Court had previously dismissed plaintiff's claims of age discrimination in the Memorandum Opinion and Order of August 23, 2007.

Mills v. Ford Motor Co., 800 F.2d 635, 639 (6th Cir. 1986) ("All the plaintiff must establish at the prima facie stage is that her discharge raised an inference of discrimination"); Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (female plaintiff established prima facie case when she showed that she was discharged for engaging in an affair with a man in the office who was not likewise discharged).

In the absence of direct evidence of discrimination on the part of the employer a prima facie case may be established inferentially by showing that members of a protected class are treated less favorably than non-members of that class. To set forth a prima facie case based on disparate treatment a plaintiff must identify a non-member of the protected class with whom the plaintiff is "similarly situated." To be similarly situated the plaintiff must show that the non-protected class member "dealt with the same supervisor, [was] subject to the same standards and...engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Talley v. Bravo Pitino Restaurant, Ltd, 61 F.3d 1241, 1247 (6th Cir. 1995). Accord, Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003). The plaintiff's position must be nearly identical in all relevant respects to that of the employee with whom the plaintiff seeks to be compared. Jacklyn v. Schering-Plough Healthcare Products, 176 F.3d 921, 929 (6th Cir. 1999). Employees with similar titles may still be dissimilarly situated if their duties are different. Brown v. EG&G Mound Applied Technologies, Inc., 117 F.Supp.2d 671, 681 (S.D.Ohio 2000).

When a prima facie showing of discrimination is made there is a rebuttable presumption that the employer has engaged in impermissible discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). At that point the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802; Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1214 (6th

12

Cir. 1996).  The employer may produce evidence that "the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason."  Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, supra at 254).  Once the employer has met the foregoing burden of production the presumption of discriminatory animus is no longer in effect.

If there is negation of the presumption of discriminatory animus the factfinder is back to square one, and must determine whether the challenged employment action was motivated by discriminatory animus, taking into consideration all evidence of record, including any evidence indicating that the reason articulated by the employer for the action was pretextual. A plaintiff may accomplish this either by showing that the proffered reason is unworthy of belief, or that the true reason for his/her  rejection, notwithstanding the proffered reason, was of a discriminatory nature. Goostree v. Tennessee, 796 F.2d 854 (6th Cir. 1986), cert. denied, 480 U.S. 918 (1987).

> "Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).  In order to challenge the credibility of an employer's explanation, the plaintiff must show by a preponderance of the evidence: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse employment action.  See Manzer, 29 F.3d at 1084 (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).

E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 834 (6th Cir. 1997).  Accord, Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506, 516 (6th Cir. 2003); Zambetti v. Cuyahoga

13

Community College, 314 F.3d 249, 258 (6th Cir. 2002).  The plaintiff always retains the ultimate burden of persuasion.  E.E.O.C. v. Yenkin-Majestic, supra at 834, citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987).

When the foregoing issues are raised upon motion for summary judgment the following applies:

> In the context of a summary judgment proceeding, [St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)] requires that, once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on [discrimination]. . ." Direct or indirect evidence of discriminatory motive may do but 'the evidence as a whole. . .must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by [discriminatory] animus.'". . .Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer.

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). (Citations and footnotes omitted.)  Accord, Manzer v. Diamond Shamrock Chemicals Co., supra at 1083, n.3.

Although disbelief of the employer's proffered reason for employment actions together with the facts making up the prima facie case may suffice to show discrimination, "nothing in law would permit [a court] to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 514-15 (1993).

The School Board argues at the outset that it is entitled to summary judgment on plaintiff's

14

claims of retaliation under either the ADEA or state law[6], a proposition with which this Court agrees.

The purpose of Title VII's anti-retaliation provision is to protect employees from adverse action as a result of opposing that which is made unlawful by other sections of Title VII.  In reviewing a retaliation claim courts apply the <u>McDonnell-Douglas</u> analysis.  <u>Wrenn v. Gould</u>, 808 F.2d 493 (6th Cir. 1987).  Under that mode of analysis a plaintiff bears the burden of showing that he/she engaged in an activity protected by Title VII of which his/her employer was aware, that he/she was subject to an adverse employment action, and that there is a causal connection between the protected activity and the adverse action.  <u>Imwalle v. Reliance Medical Products</u>, <u>supra</u> at 544; <u>Nguyen v.  City of Cleveland</u>, 229 F.3d 559, 563-64 (6th Cir.  2000);   <u>Johnson v. U.S. Dept. of Health and Human Services</u>, 30 F.3d 45,47 (6th Cir. 1997).

If a plaintiff satisfies the foregoing burden of production the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions.  <u>Texas Dep't of Community Affairs v. Burdine</u>, <u>supra</u>.   Having done so, the burden then shifts back to the plaintiff to show that the protected activity was a "significant factor" in the discharge, meaning that it was one of the reasons for the discharge.  <u>Wrenn v. Gould</u>, <u>supra</u>.

Plaintiff easily satisfies the first two elements, as she engaged in a protected activity by filing a charge of discrimination with the EEOC on October 25, 2005, a fact of which the School Board concedes that it had knowledge.   Plaintiff's problem is demonstrating an adverse employment action based on retaliation, which she claims was the failure to hire her for the 2006-

---

[6]Ohio's statute prohibiting retaliation in the employment context is Ohio Revised Code, Section 4112.02(I).  The burden shifting analysis of the anti-retaliation provision within Title VII applies equally to a retaliation claim under Ohio law.  <u>Imwalle v. Reliance Medical Products</u>, 515 F.3d  531, 544 (6th Cir. 2008), citing <u>Minadeo v. ICI Paints</u>, 398 F.3d 751, 763 (6th Cir. 2005).

2007 school year.

During plaintiff's deposition she testified that in April of 2006 she wrote a letter to Mr. Keener indicating that she was applying for "any teaching position that was open." She ultimately was hired for the last two months of that school year as a long-term, full-time kindergarten teacher to substitute for a teacher who was off on family leave, contrary to her claim that she was not hired that year by the School Board.

The other position for which plaintiff was interviewed during that school year was "an open fourth grade position." It was unclear as to whether it was a full- or part-time position, but once again, as a rehired retiree the plaintiff would have been automatically non-renewed at the end of the school year under the terms of the negotiated agreement. The interviewers were given a list of questions to ask each candidate, the responses to which were rated according to an agreed upon numerical rating scale. Plaintiff scored the lowest of all the candidates after the totals of each interviewer's rating sheet were added together and was not offered the position.

Furthermore, plaintiff's allegations that the interviewers were biased and that Mr. Keener was aware of that fact, as she claims to have been evidenced by the fact that at least one of the interviewers was present at a staff meeting where teachers' union employees purportedly expressed hostility toward her, are misplaced in light of the fact that the staff meeting during which plaintiff's employment with the district was referenced took place in March of 2007, nine months after the interview in question.

In summary, as regards plaintiff's claims of retaliation, she has failed to meet her burden of producing sufficient evidence to overcome summary judgment as to whether there was an adverse employment action (with regard to the claim that she was not hired for the 2006-2007

school year) or as to whether there was a causal connection between the protected activity and another adverse employment action (the failure to hire her for the fourth grade position during the 2006-2007 school year).  As a consequence, the School Board's motion for summary judgment pertaining to plaintiff's claims of retaliation must be granted.[7]

The same analysis applies to the determination as to whether plaintiff has demonstrated a prima facie case of national origin discrimination under Title VII.

Although defendant concedes that plaintiff is a member of the protected class and was qualified to perform the 2005-2006 half-time kindergarten teacher position which was ultimately awarded to Ms. Drinan, the School Board argues that she failed to meet her burden of production on the remaining McDonnell Douglas elements of a prima facie case, i.e. that she suffered an adverse employment action and that she was treated less favorably than similarly-situated, non-minority individuals.

As was previously addressed herein, although plaintiff was not hired for the 2005-2006 half-time kindergarten teacher position which was awarded to Ms. Drinan, she was, nonetheless, offered, and executed a contract for, the position of full-time, long-term, substitute kindergarten teacher, at the same salary as that for the position which had been given to Ms. Drinan, but she did not perform that job because prior to starting the school year she provided a medical excuse indicating that she was unable to work full-time.  Had plaintiff been employed in either the position awarded to Ms. Drinan or the position for which she was selected, as a rehired retiree she

---

[7]In plaintiff's brief in opposition to the instant motion for summary judgment she also refers to the fact that she "was not hired at all for the 2007-2008 school year" as evidence of retaliation.  This Court agrees with the assertion of the School Board that absent any reference in either her EEOC charge or her complaint in these proceedings to a failure to hire her in that school year, it is not properly at issue.  That aside, there is no evidence that any failure to hire her for that school year was based on discrimination.

nonetheless would have been automatically non-renewed at the end of the school year pursuant to the terms of the negotiated agreement.  In light of the fact that the plaintiff would have earned the same amount of money if she had worked in either position and that the same result, non-renewal, would have occurred at the end of the school year, there is no evidence of an adverse employment action actionable under the theory of national origin discrimination.

Adverse employment action aside, the plaintiff and Ms. Drinan were not similarly-situated, in light of the fact that Ms. Drinan was under contract as a member of the bargaining unit with rights to continuing employment and was not subject to the terms of Section 6.012 of the MOA as she was not previously retired, whereas the plaintiff was a retiree eligible for employment under a one year contract only, which was subject to automatic non-renewal at the end of the contract year.  As a rehired retiree the plaintiff was not eligible for continuing contract status during any period of employment, as was Ms. Drinan, she was on a different pay scale than Ms. Drinan, and she was not entitled to the same rights and benefits as that of a teacher, such as Ms. Drinan, who had not previously retired.

Absent evidence of an adverse employment action and/or that Ms. Drinan was similarly-situated, plaintiff cannot satisfy her burden of production pertaining to a prima facie case for her claim of national origin discrimination, and summary judgment is warranted.

The School Board's assertion that the plaintiff has abandoned her claim of violation of 42 U.S.C. §1983 is misplaced.  At pages 12-13 of plaintiff's brief in opposition to defendant's motion for summary judgment, she argues that §1983 was violated by the School Board's having negotiated an agreement which offers a "clear advantage" to non-retirees, to the detriment of retirees, by adopting a policy or practice to hire only non-retirees into permanent positions with

continuing contracts.  However, the same rationale applied by this Court to grant the School Board

summary judgment on the plaintiff's claims of violation of the ADEA is applicable to plaintiff's

§1983 claim, as illustrated in this Court's holding in that regard:

> In a recently decided, unreported case the Sixth Circuit Court of Appeals has defined the standard to be applied in an age discrimination disparate impact case as follows:
>
>> To establish a prima facie case of disparate impact, a plaintiff must not only identify a particular policy that he alleges is discriminatory in operation, but must "through relevant statistical analysis prove [] that the challenged practice has an adverse impact on a protected group."
>
> Butts v. McCollough, unreported, 2007 U.S.App. LEXIS 10667 (6th Cir. May 2, 2007), quoting Isabel v. City of Memphis, 404 F.3d 404, 411 (6th Cir. 2005).  In Butts, the plaintiff argued that his union's facially neutral policy of granting referral preference to non-pensioners discriminated against older workers.  The district court granted summary judgment in favor of the union, and the appellate court affirmed that decision, on the basis that the plaintiff offered nothing more than speculation of disparate impact upon older workers, without any "statistically-supported showing of the rule's disparate impact[.]" Id. at *24.
>
> Turning to the School Board's contention that plaintiff cannot establish a prima facie case of age discrimination, the plaintiff concedes in her brief in opposition to the instant motion that her "claim sounds in 'disparate impact,' not disparate treatment," a surprising concession in light of language in the complaint indicating otherwise.  That having been said, in light of the plaintiff's clarification as to her theory of the case, this Court will only consider her claims in the context of a disparate impact theory.
>
> It is in that context that this Court must agree with the defendant School Board's assertion that the plaintiff's age discrimination claims must be dismissed for failure to allege sufficient facts to state a claim for relief under the disparate impact theory that is plausible on its face. Careful reading of the complaint, as well as the plaintiff's response to the motion of the school Board, reveals an uncomplicated theory of the case–that the application of Section

19

6.012 of the MOA which implements a less favorable pay scale for retired employees, and provides for re-employment of retired employees under a one year contract with automatic non-renewal of any re-employment contract after one year, has a disparate impact on, and therefore discriminates against, older employees. However, just as the plaintiff did in the Butts case, the plaintiff in this case has not offered anything more than conclusory speculation of disparate impact upon older workers, without alleging the existence of any statistical support of such disparate impact. To the contrary, the defendant can easily provide examples of how retired employees who, after opting for retirement, are re-hired by this employer earn more than they did before retirement considering that their post-retirement income is earned while at the same time receiving pension payments and retirement benefits.

In light of the absence of evidence of any statistical support of discriminatory treatment consequent to the School Board's policy or practice to hire only non-retirees into permanent positions with continuing contracts, the School Board's request for summary judgment on this claim is warranted.

In light of all the foregoing, this Court finds that there are no genuine issues of material fact on the claims raised by plaintiff, and that defendant is entitled to judgment thereon as a matter of law.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:    October 23, 2008

20